UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

TANYA R. COLLETT-BROWN,

        Plaintiff,

    v.                                        CAUSE NO. 1:19-cv-170 DRL-SLC

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

OPINION & ORDER

Plaintiff Tanya R. Collett-Brown seeks judicial review of the Social Security Administration's decision denying her application for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. § 423(d). Ms. Collett-Brown requests this court remand her claim for further consideration. The magistrate judge issued a report recommending that this court affirm the decision and deny Ms. Collett-Brown's request. Ms. Collett-Brown objects to the magistrate judge's recommendation. Having reviewed the underlying record and the parties' arguments, the court adopts the magistrate judge's recommendation and affirms the Commissioner's decision.

BACKGROUND

In November 2015, Ms. Collett-Brown filed an application for Social Security disability insurance benefits and supplemental security income, alleging a disability onset date of March 10, 2015 [R. 105]. This application was denied initially and upon reconsideration [R. 137-44, 150-56, 174-80]. On September 7, 2017, a hearing was held before Administrative Law Judge Genevieve Adamo [R. 7-36 (transcript)]. On February 15, 2018, the ALJ denied Ms. Collett-Brown benefits, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments [R. 115-16]. Ms. Collett-Brown challenged the ALJ's

decision by timely filing a request for review of hearing decision with the Appeals Council [R. 123]. The Appeals Council denied review [*Id.*]. Because it denied review of the unfavorable decision, the ALJ's decision is the final decision of the agency. *See* 20 C.F.R. §§ 404.981; 416.1481.

Thereafter, Ms. Collett-Brown timely filed her complaint with an opening brief. The Social Security Administration timely filed a response, and Ms. Collett-Brown replied. The magistrate judge issued a report recommending that this court affirm the ALJ's decision. Ms. Collett-Brown timely objected to the recommendation. The issues are ripe for decision.

STANDARD

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

A magistrate judge may enter a report and recommendation of dispositive motions. Fed. R. Civ. P. 72(b)(1). "If a party objects to a magistrate judge's recommended disposition, the district judge shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." *Willis v. Caterpillar,*

2

*Inc.*, 199 F.3d 902, 904 (7th Cir. 1999) (quotation omitted). After conducting *de novo* review, the district judge "may accept, reject, or modify the recommended decision." *Id.*

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

The ALJ found that Ms. Collett-Brown satisfied step one by not engaging in substantial gainful activity since the alleged onset date, March 10, 2015 [R. 108]. The ALJ then found that Ms. Collett-Brown satisfied step two because she had several severe impairments, including status post right transtibial amputation, peripheral vascular disease status post stenting, chronic obstructive pulmonary disease (COPD), dysthymic disorder, adjustment disorder, and anxiety [*Id.*]. Next, the ALJ found that Ms. Collett-Brown's impairments or combination of impairments did not meet or exceed any of the specific impairments listed that are so severe as to be conclusively disabling [R. 108-10].

The ALJ then went on to find that Ms. Collett-Brown had the residual functional capacity (RFC) to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) [*see* R. 110]. She could not climb ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs, could only occasionally balance, stoop, and kneel, and had to avoid concentrated exposure to extreme heat

3

and cold [*Id.*]. She was able to understand, carry out, and remember simple, routine, and repetitive tasks with no production rate or pace work with only occasional simple work-related decision making required [*Id.*]. She could respond appropriately to occasional changes in the workplace [*Id.*]. She could also have frequent interaction with supervisors [*Id.*].

At step four, the ALJ determined, based on her RFC findings, that Ms. Collett-Brown was unable to continue performance of her past relevant work [R. 114]. At step five, however, the ALJ found that, considering Ms. Collett-Brown's age, education, work experience, and RFC, there are jobs that exist in the national economy that she could perform [R. 115]. Specifically, the ALJ found Ms. Collett-Brown capable of performing the requirements of a mail clerk (DOT 239.687-014), eyeglass frames polisher (DOT 713.684-038), and addresser (DOT 209.587-010) [*Id.*]. Because of her determination at step five, the ALJ found that Ms. Collett-Brown was not disabled under the Act [R. 116].

Ms. Collett-Brown claims that the ALJ made three mistakes that necessitate remand: (1) the ALJ failed to address SSR 16-3p properly and ignored evidence supporting Ms. Collett-Brown's symptom testimony; (2) the RFC failed to account for her mental limitations; and (3) the RFC failed to account for her physical limitations. The magistrate judge issued a report recommending this court affirm the ALJ's opinion. Ms. Collett-Brown objected to the magistrate judge's recommendation, reasserting her original three objections. The court accordingly conducts *de novo* review on all three objections. *See Willis*, 199 F.3d at 902.

A. *The ALJ Properly Analyzed Ms. Collett-Brown's Symptom Testimony.*

Ms. Collett-Brown challenged the ALJ's consideration of her symptom testimony, asserting that the ALJ failed to articulate her application of SSR 16-3p in assessing Ms. Collett-Brown's symptoms. The court agrees with the magistrate judge and affirms the ALJ's conclusion.

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at 2 (Oct. 25, 2017). Because an ALJ is in the best position to evaluate the credibility of a witness, the ALJ's consideration of the claimant's symptom testimony is entitled to "special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'") (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"). The court "read[s] the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. Appx. 674, 678-79 (7th Cir. 2010).

The Code of Federal Regulations lists many factors an ALJ should consider when evaluating a claimant's symptoms, including pain. *See* 20 C.F.R. § 404.1529. These factors include the objective medical evidence; the claimant's prior work record; statements made by the claimant about her symptoms; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for symptoms; treatment for symptoms (other than medication); and any other measures used to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(2-3).

5

The ALJ considered the objective medical evidence and Ms. Collett-Brown's own statements regarding her symptoms. The ALJ began by stating: "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant has shown that she can adjust life with a prosthesis and is managing her other physical and mental impairments" [R. 112]. The ALJ then observed that "the claimant's record shows that she is adapting to life post amputation" [*Id.*]. The ALJ reviewed the medical evidence pertaining to Ms. Collett-Brown's amputation and prosthesis. The ALJ considered that in April 2016, ten months after her amputation, Ms. Collett-Brown reported that she "continues to wear her prosthesis for a total of 8 hours daily[,] . . . . has not had any concerns with the fit of the socket[,] . . . . and uses a crutch as an assistive device during ambulation in public areas due to confidence" [R. 905; *see* R. 112]. Ms. Collett-Brown gave a similar report to her nurse practitioner in August 2016, adding that she was busy at home raising her three sons [R. 867]. The ALJ also considered that Ms. Collett-Brown told Dr. Nehal Singh, her family practitioner, that she was "doing well" and had no concerns in January and April 2017 [R. 112, 873-76].

The ALJ observed [R. 111] that this medical evidence and Ms. Collett-Brown's own statements were inconsistent with the following statements on her adult function report: that she could stand or walk on her prosthetic leg no longer than ten to fifteen minutes [R. 313], that she could not walk on her prosthetic limb "without crutches due to [her] leg not being straight," [R. 317; *see* R. 315], and that every day she uses a walker or crutches [R. 316-17]. At her hearing, Ms. Collett-Brown also testified that her prosthetic "causes major discomfort," [R. 19], that she could stand "[l]ess than five minutes," [R. 25-26], and that she could only walk "maybe two lengths of [the hearing] room" [R. 25].

The ALJ also considered the treatment measures that Ms. Collett-Brown underwent, or, in this case, failed to undertake. 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *see also Ellis v. Astrue*, 2010 U.S. Dist. LEXIS 100066 at 59-60 (N.D. Ind. Sept. 20, 2010) (affirming the ALJ's discounting

6

of the claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition). The ALJ noted that Ms. Collett-Brown had never "gone back to get [her prosthesis] fixed or told anyone about" the discomfort she alleged it was causing [R. 111]. She also never went to physical therapy, contending that "her doctor told her that she did not need it" [*Id.*]. The ALJ also considered Ms. Collett-Brown's peripheral vascular disease treatment, noting it had improved after she underwent a peripheral catheterization in August 2015 [R. 112]. The ALJ discussed Ms. Collett-Brown's COPD, noting that a June 2015 X-ray showed no active disease and that she most often denied shortness of breath at clinical examination [R. 113]. The ALJ considered that Ms. Collett-Brown used an inhaler for her COPD but did not carry it with her [*Id.*].

The ALJ also noted Ms. Collett-Brown's mental health claims that she suffered from a "chemical imbalance" since 2001 that caused symptoms of depression and anxiety [*Id.*]. The ALJ noted that clinical examinations most often demonstrated a normal mood and effect [*Id.*]. The ALJ considered that a consultative examination by Leslie Predina, Ph.D., HSPP, in January 2016 did reveal a flat affect and depressive mood, but only minor memory problems and slightly less than average judgment, abstract thinking, and arithmetic skills [*Id.* (citing R. 691-94)]. The ALJ also noted that a consultative examination by Candace Martin, Pys.D., HSPP, revealed adequate attention and concentration and an ability to follow instructions well; normal mood to the situation, though somewhat incongruent with her report of depression; and strong social skills with appropriate interactions [*Id.* (citing R. 828-32)]. The ALJ also assessed the treatment that Ms. Collett-Brown had undergone for her mental impairments, which consisted of taking anti-depressants (Cymbalta most recently) but no counseling or inpatient care [R. 110, 113].

The ALJ also reviewed Ms. Collett-Brown's daily activities. *See Burmester v. Berryhill*, 920 F.3d 507, 510-11 (7th Cir. 2019) (considering the claimant's performance of daily activities as a factor when

discounting the credibility of her symptom testimony). The ALJ noted that despite her prosthesis and depression she could do dishes, cook, take care of a pet, help her children with homework, read, watch television, and care for her children, one of whom has autism [R. 110-11]. The ALJ noted that Ms. Collett-Brown admitted she could pay attention for long periods of time, could finish what she started, and could follow instructions [R. 109, 315, 375].

Last, the ALJ discussed medical source opinions, none of which supported Ms. Collett-Brown's claim that she was unable to perform light work [R. 113-14]; *see Anderson v. Bowen*, 868 F.2d 921, 926 (7th Cir. 1989) (affirming the ALJ's decision assigning an RFC for light work where "[n]ot one of the physicians who examined [the claimant] found that he was unable to perform light work"). Drs. M. Brill and Jerry Smartt, the reviewing state agency physicians, opined that Ms. Collett-Brown could stand or walk up to six hours in an eight-hour workday [R. 62, 93]. S. Hill, Ph.D, and Kenneth Neville, Ph.D., the reviewing state agency psychologists, found that Ms. Collett-Brown could perform simple tasks, relate to coworkers and supervisors on a superficial and ongoing basis, attend to tasks for sufficient periods of time, and manage stresses involved with work [R. 65, 96]. Dr. Martin observed that Ms. Collett-Brown had no difficulty understanding or remembering job instructions and had adequate concentration to stay on task for a job if she was invested in it, but that she may have some difficulty getting along with coworkers or supervisors if she was feeling particularly tired or irritable due to her depression [R. 832].

Ms. Collett-Brown objects that both the ALJ and magistrate judge ignored negative medical records regarding Ms. Collett-Brown's adaptation to her prosthetic leg, such as evidence that nearly a year after the amputation, she was using her prosthetic leg but had a cautious gait and was still using one crutch [ECF 18 at 2-3 (citing R. 868)]. Notably, Ms. Collett-Brown does not allege that the ALJ ignored an entire line of evidence, but merely that the ALJ ignored "some of" the negative medical records [*Id.*]. An ALJ is not required to cite to every piece evidence in the record, and the ALJ did

8

refer to evidence that would weigh in favor of a finding of disability, such as Ms. Collett-Brown needing assistance getting on and off the table at Dr. Carolyn Greer's March 2016 consultative examination. [R. 112]; *see Terry*, 580 F.3d at 477 ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."). The court finds this objection to be without merit.

Ms. Collett-Brown next objects that the magistrate judge improperly dismissed her treatment history as being routine and conservative. In making this argument, Ms. Collett-Brown relies on an unpublished opinion from another district within this circuit. *See Hurlbut v. Colvin*, 2017 U.S. Dist. LEXIS 16822 (N.D. Ill. Feb. 7, 2017). That court rejected an ALJ's opinion that medical treatment was "supposedly conservative," finding that the question of whether medical treatment was conservative "requires medical expertise to answer." *Id.* at 4-6. Ms. Collett-Brown points to no finding by the ALJ that her treatment history was routine and conservative, and ultimately the question on *de novo* review is whether the ALJ's opinion had "substantial evidence." *See Terry*, 580 F.3d at 475. The court finds that it does. The objection to the magistrate judge's report and recommendation is accordingly of no moment. The magistrate's recommendation is also consistent with *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (finding claimant's subjective complaints of disabling pain were not entirely credible when treatment was "routine and conservative").

Ms. Collett-Brown next objects that the ALJ improperly weighed Ms. Collett-Brown's activities of daily living. An ALJ may consider a claimant's daily activities when evaluating the claimant's credibility so long as it is done "with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ may not place "undue weight" on her daily activity analysis. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). The ALJ should explain any purported inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Reading the ALJ's opinion "as a whole and with common sense," *see*

9

*Buckhanon*, 368 F. Appx. at 678-79, the activities of daily living were one factor among many that the ALJ considered. The activities the ALJ considered [*see* R. 110-11] were relevant to the assessment of Ms. Collett-Brown's symptoms. Notably, the activities show that Ms. Collett-Brown had the mental ability to complete certain tasks and physical abilities to do various household chores.

The court agrees with the magistrate judge that the ALJ provided "substantial evidence" for her conclusion that Ms. Collett-Brown's testimony regarding her symptoms was inconsistent with the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The ALJ built a logical bridge from the evidence to her conclusion. *Id.* When this is done, the court does not reweigh the evidence or substitute its own judgment for that of the ALJ. *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013). Accordingly, the court affirms the ALJ's decision over this objection.

      B.      *The ALJ Accounted for Ms. Collett-Brown's Moderate Limitations in Concentration, Persistence, and Pace in Her RFC.*

Ms. Collett-Brown next argues that the ALJ erred by not adequately accounting for her moderate difficulties in maintaining concentration, persistence, and pace in the RFC and in the hypotheticals posed to the vocational expert (VE) at step five. The court agrees with the magistrate judge and affirms the ALJ's opinion.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, five days a week. SSR 96-8p, 1996 WL 374184 at 2 (July 2, 1996). The "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at 1; *see Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft*, 539 F.3d at 676. "[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. Appx. 652, 657 (7th Cir. 2009) (citations omitted). "The

10

ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Id.* at 657-58 (citation omitted); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing her degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184 at 4 (July 2, 1996). The "paragraph B" criteria consist of four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see Brynelson v. Berryhill*, 329 F. Supp. 3d 629, 638 n.6 (N.D. Ill. 2018). "[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184 at 4 (July 2, 1996). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." *Id.*

In assessing the "paragraph B" criteria at step three, the ALJ found that Ms. Collett-Brown had "moderate" limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself [R. 109-10]. The RFC contained the following mental RFC:

> able to understand, carry out, and remember simple, routine, and repetitive tasks with no production rate or pace work with only occasional simple work-related decision making required; could respond appropriately to occasional changes in the work place; could have frequent interaction with supervisors aside from what is necessary for general instruction or training and frequent interaction with coworkers and the general public.

[R. 110].

11

In most cases, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). The ALJ did not do this here, but this is not a *per se* rule. This circuit also lets "stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* at 619. This is often the case when "a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *Id.*

Generally, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* at 620 (noting that "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity"). Accordingly, the RFC and hypotheticals "must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. Appx. 540, 544 (7th Cir. 2014).

The phrase "simple, routine, and repetitive tasks," as the ALJ used here, refers to "unskilled work" but does not address the question whether an individual with mental impairments can perform that work. *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015). *Varga* clarified that a further limitation restricting the claimant to performing work "free of fast paced production requirements, including only simple work related decisions with few if any work place changes and no more than occasional interaction with coworkers or supervisors" was not enough for a claimant's difficulty in concentration when the problems were caused by anxiety, depression, and physical problems and pain. *Id.* at 815; *see also Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (a limitation to "simple, routine, repetitive

tasks with few workplace changes" on its own was not enough to account for a claimant's moderate limitations in concentration, persistence, and pace). But this circuit employs a case-by-case analysis of the RFC and has upheld an RFC's limitation to "simple, repetitive tasks" for individuals with limited concentration when the medical record evinced that none of the claimant's "treating or consulting physicians described any . . . concentration problems." *Palmer v. Saul*, 779 F. Appx. 394, 399-400 (7th Cir. 2019); *see also Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019) (RFC limiting claimant to simple, routine, and repetitive tasks sufficient for a claimant with moderate limitations in concentration, persistence, and pace when the claimant's physicians observed that he appeared "alert and orientated" and performed well on memory tests, and ALJ credited claimant's testimony and included accommodations for "mild mental functional impairment" in RFC assessment).

This case is more in line with this circuit's conclusions in *Palmer* and *Jozefyk* than *Winsted* or *Varga* because the record evinces that the RFC adequately encompassed Ms. Collett-Brown's mental limitations, even though it did not explicitly refer to concentration, persistence, and pace. As noted by the magistrate judge, the ALJ considered Ms. Collett-Brown's statements that she lacked motivation but could still pay attention for long lengths of time and could finish what she started [R. 109, 315, 375]. The ALJ also gave partial weight to Dr. Martin's finding that Ms. Collett-Brown's attention and concentration were adequate, and partial weight to the opinions of the state-agency psychologists who found that Ms. Collett-Brown could perform simple tasks, attend to tasks for sufficient periods of time, and manage stresses involved with work [R. 113-14, *see* R. 65, 96, 830, 832]. The magistrate judge also noted, and Ms. Collett-Brown points to no contrary evidence, that the record is devoid of any medical source opinion that assigns her greater limitations in concentration, persistence, or pace than assigned in the RFC. The ALJ nevertheless went *beyond* these medical recommendations to formulate a more restrictive RFC that included "no production rate or pace work." [R. 110]; *see Youmans v. Colvin*, 2016 U.S. Dist. LEXIS 86433 at 21 (N.D. Ill. July 5, 2016) (upholding RFC that was more restrictive

13

than those suggested by the only medical opinions in the record). The ALJ incorporated other restrictions into the RFC, such as "only occasional simple work-related decision making required," "occasional changes in the work place," and restrictions to account for Ms. Collett-Brown's difficulties in maintaining social functioning [R. 110].

The ALJ built an "accurate and logical bridge" between the evidence, and her RFC mental limitations were supported by "substantial evidence," *see Craft*, 539 F.3d 668, 677-78 (7th Cir. 2008). This court accordingly affirms the ALJ's conclusion over this objection.

    C.    *The ALJ Did Not Need to Discuss Ms. Collett-Brown's Use of a Walker in the RFC.*

Ms. Collett-Brown argued that the ALJ erred when assigning the physical RFC by omitting any discussion of her need to use a walker for ambulation. The court agrees with the magistrate judge and affirms.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185 at 7 (July 2, 1996). Absent such documentation, the ALJ does not need to discuss the use of an assistive device in the RFC. *Tripp v. Astrue*, 489 F. Appx. 951, 955 (7th Cir. 2012); *cf. Gorman v. Berryhill*, 2018 U.S. Dist. LEXIS 150819 at 4 (N.D. Ind. Sept. 5, 2018) (Van Bokkelen, J.) ("Normally, an ALJ must confront evidence that Plaintiff uses a cane.").

This circuit has provided guidance on when the ALJ must confront evidence of a claimant's hand-held assistive device. *See Gorman*, 2018 U.S. Dist. LEXIS 150819 at 4-5 (discussing cases). On the one hand, this circuit has remanded where an ALJ ignored a cane prescription when the claimant used a cane at the hearing and there were various claims scattered throughout the record that the claimant needed a cane. *Thomas v. Colvin*, 534 F. Appx. 546, 550 (7th Cir. 2013). On the other hand,

14

this circuit has affirmed an ALJ's RFC ignoring an examining physician's statement that the claimant "need[ed] a crutch" when the record was unclear whether the statement was a medical opinion or merely a recitation of what the claimant told the physician. *Tripp*, 489 F. Appx. at 955. Interpreting these cases, federal courts in this state have discussed when an ALJ must confront this evidence. *See Gorman*, 2018 U.S. Dist. LEXIS 150819 at 4 (discussing cases). One court said that the ALJ is required to address this evidence when the claimant presents "specific, unambiguous evidence of the circumstances in which the cane is medically necessary." *See Powers v. Colvin*, 2016 U.S. Dist. LEXIS 124929 at 19 (S.D. Ind. Aug. 25, 2016) (Dinsmore, J.) (citing *Tripp*, 489 F. Appx. at 955). Another court remanded an ALJ's opinion, however, when the ALJ received an ambiguous opinion of "[p]atient to use a cane for ambulation," finding that the ALJ should have contacted the doctor to clarify. *See Miller v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 85466 at 10-11 (N.D. Ind. May 22, 2018) (Collins, J.).

Reconciling these cases, where there is unequivocal medical opinion or evidence for the need of an assistive device, then the ALJ must confront the evidence. *See, e.g., Thomas*, 534 F. Appx. at 550 (requiring discussion when there was a prescription—that is, a medical opinion); *see also Powers*, 2016 U.S. Dist. LEXIS 124929 at 19 (requiring medical opinion about cane's necessity). After all, this is consistent with SSR 96-9p, 1996 WL 374185 at 7 (July 2, 1996). Mindful that there are instances in which an ALJ is required to solicit additional information on a medical opinion, *see Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004), an ambiguous opinion or evidence about the need for an assistive device may require follow up. *See Tripp*, 489 F. Appx. at 955; *Miller*, 2018 U.S. Dist. LEXIS 85466 at 10-11.

Ms. Collett-Brown failed to produce an unambiguous opinion or other evidence saying that an assistive device was medically necessary. No physician opined that Ms. Collett-Brown required a hand-held assistive device to ambulate for 12 continuous months. *See* 20 C.F.R. §§ 404.1509, 416.909

15

(to be disabling, an impairment must be expected to result in death or last 12 continuous months in duration). The state agency physicians, Drs. Brill and Smartt, both opined that Ms. Collett-Brown could stand and walk for six hours [R. 62-64, 93-95, 114]. During Dr. Greer's consultative examination, less than six months after Ms. Collett-Brown's amputation and before receiving a prosthesis, Ms. Collett-Brown was using crutches, but she had full (5/5) leg strength [R. 112, 726]. Records in 2017 documented that Ms. Collett-Brown was doing well [R. 112, 873-74]. As discussed *supra*, Ms. Collett-Brown did not complain to her treatment providers that her prosthesis was uncomfortable [R. 18-20 ("Q: Have you told any doctors about the problems you're having with the prosthetic? A: No."), 25, 111]. She told her primary care physician, Dr. Singh, in January and April 2017 that she was doing well [R. 112, 873-74]. Further undermining her claims of extreme leg problems was her decision not to engage in physical therapy [R. 19].

The only evidence of record that Ms. Collett-Brown cites to support her objection are her own statements that she required the use of a walker, that her mother verified her use of a walker, that the treating physicians noted that Ms. Collett-Brown used a walker during visits, and that she used a walker. ECF 18 at 8-9. This is not the medical documentation under SSR 96-9p that would establish both a need for a walker and the circumstances in which it must be used. As noted in *Tripp*, 489 F. Appx. at 955, Ms. Collett-Brown provides no "unambiguous opinion of a physician" that use of a walker was "medically necessary." The court will not disturb an RFC finding if it is supported by "substantial evidence" and if the ALJ builds a logical bridge between the evidence and her conclusion. *See Craft*, 539 F.3d at 673, 677-78. Substantial evidence supports the ALJ's finding here and a logical bridge was built between the evidence and her conclusion.

Even if Ms. Collett-Brown were correct that the ALJ should have discussed her alleged need for an assistive device in the RFC, the error would be harmless. *See Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (harmless errors that do not ultimately impact the ALJ's conclusion do not warrant

remand). As acknowledged by the magistrate judge, the VE testified at the hearing that if a hypothetical individual with Ms. Collett-Brown's RFC, age, education, and work experience also required the use of a crutch or walker for ambulation, she could still perform the occupation of addresser of which 5,000 jobs existed in the national economy [*See* R. 33-34 ("I would say if a person only needed the crutch or walk for ambulating, not while they're standing that they could still do that job. However, I would reduce those numbers [to] 5,000 in the nation.")]. This is more than enough to be considered a "significant number" of jobs. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 jobs); *Nix v. Sullivan*, 744 F. Supp. 855, 863 (N.D. Ind. 1990) (Lee, J.) (675 jobs), *aff'd*, 936 F.2d 575 (7th Cir. 1991); *see also Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs). Ms. Collett-Brown does not raise any argument that suggests that remand for reconsideration of the need for an assistive device would lead to a different result. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Accordingly, the court adopts the magistrate judge's recommendation affirming the ALJ's judgment on this ground for two alternative reasons: the RFC is supported by substantial evidence and any alleged error in the RFC was harmless.

## CONCLUSION

The court finds that the ALJ provided substantial evidence for each of her conclusions and built a logical bridge from the evidence to her conclusions. *See Villano*, 556 F.3d at 562. Accordingly, the court ADOPTS the magistrate judge's report and recommendation (ECF 17), AFFIRMS the judgment of the ALJ, and DENIES Ms. Collett-Brown's request for remand (ECF 12 and 18).

SO ORDERED.

April 6, 2020
                *s/ Damon R. Leichty*
                Judge, United States District Court